**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSEPH SIDNEY JOHNSON, <br> Plaintiff, <br> v. <br> DISTRICT OF COLUMBIA, *et al.*, <br> Defendants. | Civil Action No. 17-883 (CKK) |
| ASHTON WILKINS, <br> Plaintiff, <br> v. <br> DISTRICT OF COLUMBIA, *et al.*, <br> Defendants. | Civil Action No. 17-884 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(August 13, 2018)

During discovery in these cases consolidated for that purpose, Plaintiffs Joseph Johnson and Ashton Wilkins have attempted to subpoena portions of certain documents belonging to the U.S. Attorney's Office for the District of Columbia ("USAO"), which is not a party to these actions. USAO opposes the disclosure of this information. Defendants, the District of Columbia and five Metropolitan Police Department ("MPD") officers,[1] have not taken a position. Upon consideration of Plaintiffs' and USAO's letter briefing, the relevant legal authorities, and the record as a whole, the Court **DENIES** Plaintiffs' request for this disclosure.

---

[1] The defendant officers are Owais Akhtar, Amina Coffey, Francis Martello, Cameron Reynolds, and A. Willis, Jr.

1

# I. BACKGROUND

The Court shall briefly summarize the allegations in the respective First Amended Complaints that are pertinent to Plaintiffs' request. On March 8, 2016, Plaintiffs were among a group of people gathered recreationally in the Gallery Place area of Washington, DC. *See* 1st Am. Compl. ¶ 9, *Johnson v. District of Columbia*, No. 17-cv-883 (D.D.C.), ECF No. 13 ("*Johnson* FAC"); 1st Am. Compl. ¶ 10, *Wilkins v. District of Columbia*, No. 17-cv-884 (D.D.C.), ECF No. 11 ("*Wilkins* FAC"). A "dispute" between two of the people resulted in MPD intervention.[2] *Johnson* FAC ¶¶ 11, 12; *Wilkins* FAC ¶¶ 12, 13. The respective First Amended Complaints are somewhat ambiguous as to the precise sequence of the following events, but the Court records them as best it can decipher. The MPD officers allegedly "savagely hit and sprayed with pepper spray or mace or some other substance" each of the Plaintiffs. *Johnson* FAC ¶ 13; *Wilkins* FAC ¶ 14. When Plaintiffs objected to the way MPD officers were "manhandling and assaulting" others in the group, MPD officers allegedly attacked Plaintiffs, which appears to be an attack subsequent to the initial attack described above. *Johnson* FAC ¶¶ 15, 16, 57, 58; *Wilkins* FAC ¶¶ 16, 18-20, 65, 66. At some point during the incident, each Plaintiff was arrested on the charge of assaulting a police officer ("APO"). *See Johnson* FAC ¶ 27; *Wilkins* FAC ¶ 34.

One of the officers, Defendant Owais Akhtar, allegedly "swore out under oath a false statement" that, *inter alia*, Plaintiff Johnson had pushed and punched another of the officers, and that Plaintiff Wilkins had swung at and "assumed a fighting stance" towards one or more of the officers. *Johnson* FAC ¶ 22; *Wilkins* FAC ¶ 26. USAO brought APO charges against each Plaintiff

---

[2] The police reports—the second page of the Cobalt data form in each case—include a description of the events by one of two officers who were allegedly called to the scene by the MPD officers who initially responded. Because this case is not in the summary judgment posture, however, the Court shall draw for its description only upon the allegations in the First Amended Complaints.

in separate criminal cases in D.C. Superior Court, but eventually dismissed both cases. Plaintiffs later brought their respective civil suits against the District of Columbia and five MPD officers under 42 U.S.C. § 1983 and the common law, alleging assault, false arrest, malicious prosecution, municipal liability, and various constitutional violations. The municipal liability claims in each case were later voluntarily dismissed.

During discovery, Plaintiffs submitted a subpoena to USAO to obtain certain materials prepared in conjunction with the criminal charges against them. After negotiation narrowed the scope of the subpoena and resulted in some production, Plaintiffs indicated, in an e-mail agreed upon with Defendants and USAO, that Plaintiffs were unable to prevail as to 1) USAO's "papering notes from the prosecution of the underlying criminal case[s]," and 2) "documents or information as to why the charges were ultimately voluntarily dismissed by the USAO." The Court instructed USAO and Plaintiffs to submit successive letter briefs regarding arguments that they had outlined in the initial e-mail. Min. Order of May 7, 2018. Each brief was to include 1-2 cases regarding each of the two issues. *Id.* The Court then instructed USAO to file a reply letter brief addressing certain of the topics raised in prior briefing. Min. Order of May 17, 2018. Ultimately, the Court accepted USAO's offer to submit the documents at issue *ex parte* and under seal for the Court's *in camera* review. 1st Min. Order of June 4, 2018; *see also* Min. Orders of June 13, 2018, and June 19, 2018.

Having reviewed the parties' letter briefing, as well as the documents submitted *ex parte*, the issues raised are ripe for the Court's decision.

**II. DISCUSSION**

At the threshold, the Court observes that letter briefing crystallized the precise documents and portions thereof that remain at issue: 1) the typed factual portion of the "screener sheet" in

each case that was prepared by the Assistant United States Attorney ("AUSA") who initially decided to prosecute rather than "no paper" these cases; 2) the typed factual portion of the "papering form" in each case that another AUSA subsequently prepared; and 3) the handwritten portion of the case jacket in each case that recorded the decision to dismiss the cases as well as the rationale. The relevant handwritten entry on the case jacket consists of five lines of text. These portions of the respective documents are the same in each case.[3]

Plaintiffs seek these materials to be able to support their claim that Defendant Akhtar fabricated allegations to support the APO charges against Plaintiffs. Relatedly, Plaintiffs claim that he omitted from his representations to USAO the aspects of purported police misconduct that are alleged in the First Amended Complaints. Plaintiffs also indicate that they may use whatever material they can obtain to impeach Defendant Akhtar's testimony at trial.

The Court has reviewed the factual portions of the screener sheets and the papering forms, as well as the handwritten entries on the case jackets.[4] If criminal proceedings had continued, and the prosecution had called one or more of the MPD officers to testify, none of the material contained in these three portions of documents would be subject to disclosure under the Jencks Act, as presently embodied in Federal Rule of Criminal Procedure 26.2. There is no indication, in particular, that any information therein is a witness "statement," consisting of a "substantially

---

[3] USAO's submission to the Court indicates that a screener sheet and a papering form from a third criminal case, in which the defendant is not among Plaintiffs in these consolidated suits, also are among the documents sought by Plaintiffs. The Court's *in camera* review confirms that the factual portions of these documents in the third case are the same as those in the criminal cases against Plaintiffs Johnson and Wilkins. USAO indicates that the case jacket in this third case has been temporarily misplaced but also contains the same note as the case jackets pertaining to Plaintiffs' criminal cases.

[4] The Court observes here that the factual portions of the screener sheets and papering forms summarize the allegations against Plaintiffs that formed the alleged basis for their arrests on APO charges.

verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording." Fed. R. Crim. P. 26.2(f)(2). Moreover, the AUSAs did not express any opinion as to the credibility of the officers involved in the incident.

Plaintiffs have, or should have access to, witnesses of the incident, footage from cameras at the scene, MPD's police reports, and associated use of force incident report(s) ("UFIRs"). It is these kinds of sources that USAO would have relied upon, and did rely upon, in reaching its determination whether to go forward and prosecute the cases.[5] It is also not disputed that the cases were "nolle prossed" by USAO. Evidence of USAO's decisionmaking process in "nolle prossing" the cases would not be admissible at trial, including because the jury in the first instance can be provided with the same evidence that USAO considered and would make their own determination based on that evidence.

As for legal authority, the Court finds that the factual portions of the screener sheets and papering forms are protected from disclosure by the attorney work product doctrine. AUSAs prepared these materials while they were actively in anticipation of litigation, namely the prosecution of pending charges against Plaintiffs. *See* Fed. R. Civ. P. 26(b)(3)(A). Furthermore, because of the availability of the sources on which the AUSAs relied, Plaintiffs would likely be unable to make a sufficient showing of need and corresponding unavailability of alternatives to overcome attorney work product protection. *See id.* (exception to attorney work product protection where, *inter alia*, "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). These materials reflect the AUSAs' investigation at the respective stages in the process and ultimately

---

[5] The jury presumably would hear from live witnesses that were not available to USAO, such as Plaintiffs.

state the AUSAs' mental impressions and conclusions as to the events that transpired. *See* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Plaintiffs are not entitled to disclosure of the factual portions of the screener sheets or papering forms.

The handwritten entries on the case jackets do not qualify for the deliberative process privilege, because they are not pre-decisional. *See, e.g.*, *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (setting forth requirements for privilege, including that the communication at issue occur "before any final agency decision on the relevant matter"). To its credit, USAO admits in its letter briefing that the decisions to dismiss the cases were reached before the handwritten entries were made. For that reason, the privilege does not apply. However, as already noted, these entries relating to the AUSA decisionmaking process would not be admissible at trial through the testimony of whichever AUSA wrote them. Accordingly, Plaintiffs are not entitled to disclosure of these materials either. *See also Chang v. United States*, 246 F.R.D. 372, 373-74 (D.D.C. 2007) (finding that "principles" of absolute immunity for prosecutorial discretion foreclose deposition topics concerning District of Columbia's decision whether to prosecute in prior criminal cases).

At trial, Plaintiffs would be permitted to present witnesses to the incident, police reports, camera footage, and associated UFIR(s), which would enable the jury to decide on its own the merits of Plaintiffs' claims against Defendants.

### III. CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Plaintiffs' request for USAO to disclose the 1) factual portion of the screener sheets, 2) the factual portion of the papering forms,

and 3) the handwritten entry on the case jackets.

**SO ORDERED.**

Dated: August 13, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge